UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN WAGNER NICHOLS, an
Individual,

       Plaintiff,

             v.

STEVEN WAGNER NICHOLS, an
individual; GARY BEAGLE, as guardian ad
litem for A.N., a minor; and JULIA ANNE
SIMMONS, as personal representative of
the Estate of Rhonda Kristen Casto, deceased,

       Counterclaim Defendants.

Civil No. 10-651-HA

OPINION AND ORDER

_____

GARY BEAGLE, as guardian ad litem for
A.N., a minor,

       Cross claimant,

             v.

STEVEN WAGNER NICHOLS, an
Individual; and JULIA ANNE SIMMONS, as
personal representative of the Estate of Rhonda
Kristen Casto, deceased,

       Crossclaim defendants.

_____

JULIA ANNE SIMMONS, as personal
representative of the Estate of Rhonda Kristen
Casto, deceased,

       Crossclaimant,

             v.

STEVEN WAGNER NICHOLS, an
individual,

      Crossclaim defendant.

_____

STEVEN WAGNER NICHOLS, an
individual,

      Cross claimant,

          v.

GARY BEAGLE, as guardian ad litem for
A.N., a minor; JULIA ANNE SIMMONS, as
personal representative of the Estate of Rhonda
Kristen Casto, deceased,

      Crossclaim defendants.

_____

HAGGERTY, District Judge:

      In January 2011, defendant and counter-claimant MetLife Investors Insurance Company (MetLife) was dismissed with prejudice from this action.  The pending motions in the case include a motion [63] seeking the removal of Gary Beagle as Guardian Ad Litem (GAL) to A.N., a minor, advanced by counterclaim defendant and cross-claim defendant and cross-claimant Julia Anne Simmons (Simmons).  Also addressed below are two Motions for Summary Judgment [32 and 46] brought by Beagle on behalf of A.N.  For the following reasons, the motion seeking Beagle's removal is denied, and the summary judgment motions are granted.

**BACKGROUND**

      This case is complex and emotionally charged.  Plaintiff Steven Wagner Nichols (plaintiff) became romantically involved with Rhonda Casto (decedent) in 2005.  They had a child (A.N.) together in mid-2008.  In late 2008, plaintiff and decedent bought life insurance.  An agent met with the couple, and eventually sold policies providing benefits of one million dollars to each of them.  Each policy named the other as the primary beneficiary and the child A.N. as the contingent beneficiary.

2  - OPINION AND ORDER

Three months later, in March 2009, decedent died after a fall while hiking with plaintiff in Eagle Creek, Oregon. Her death is considered to have occurred under suspicious circumstances. Plaintiff submitted a claim for the insurance policy proceeds. Before the proceeds were paid, decedent's mother, Simmons, filed a complaint against MetLife with Oregon's Department of Consumer and Business Services.

In November 2009, the insurance company denied plaintiff's claim, declaring that the policy was void because of omissions on the application. Plaintiff sued MetLife, which removed plaintiff's suit to this court. In its Answer and Counterclaim for Interpleader, MetLife asserted that "it is unclear whether plaintiff/counterclaim defendant Steven Wagner Nichols was involved in the murder of Rhonda Casto. If he was, he may not be entitled to the $1,000,000 in proceeds due under the Policy pursuant to Oregon's slayer statute, ORS 112.455-112.555." Answer, ¶ 52. MetLife stated that if plaintiff/counterclaim defendant Nichols "is not entitled to the $1,000,000 in Policy proceeds by reason of ORS 112.515, then the proceeds would be payable to counterclaim defendant A.N., as the contingent beneficiary under the Policy." *Id.*, ¶ 53.

This court subsequently appointed Gary Beagle, a professional fiduciary, as GAL for A.N. pursuant to an unopposed motion by MetLife. The insurance proceeds were deposited in an interest-bearing account with the court. Judgment was later entered dismissing MetLife from this action.

**PENDING CLAIMS, MOTIONS, AND ANALYSIS**

Simmons obtained appointment as Personal Representative (PR) of her daughter's estate (the Estate) on September 30, 2010, for purposes of pursuing a wrongful death claim against plaintiff. Simmons has advanced the wrongful death claim in this action on behalf of beneficiaries including Simmons, A.N., and Timothy Alan Casto, decedent's purported biological father, and any step-parents. ORS 30.030(4). She also has advanced a claim to the insurance proceeds on behalf of the Estate.

Beagle, on behalf of A.N., has brought summary judgment motions challenging the Estate's claims to the insurance proceeds, and challenging the Estate's status as a party and the viability of litigating the wrongful death claim in this interpleader action. Simmons responded in part by moving to remove Beagle as GAL, effectively staying Beagle's summary judgment motions. The motion to remove is addressed first.

The parties' requests for oral argument on the pending motions are denied. The pending summary judgment motions are resolved herein, following adjudication of Simmons' removal motion.

## 1.    MOTION TO REMOVE BEAGLE AS GUARDIAN

### A.    Standards

Under Rule 17 of the Federal Rules, state law generally determines an individual's capacity to represent a minor in federal court. Fed. R. Civ. P. 17(b)(3) (stating that an individual's capacity to sue in a representative capacity is determined by "the law of the state where the court is located"). This court's appointment of Beagle has not been challenged as contrary to Oregon statutes, and this court finds no grounds for declaring the appointment to have been in violation of any law. *See, e.g.*, ORCP 27 (directing that the courts may appoint some suitable person to act as guardian ad litem for a minor under fourteen years of age who is a defendant, under application of any other party).

The First Circuit recently commented that "Next Friend" capacity in federal court "is not lightly granted." *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 90 (1st Cir. 2010). That decision underscored that "Rule 17(c) recognizes that an individual may represent the real party in interest as a Next Friend [in federal court,] but [Rule 17] offers no clear guidance regarding who may proceed as a Next Friend." *Id*.

The court examined a decision by the United States Supreme Court pertaining to third-party standing issues in the context of habeas corpus litigation. In *Whitmore v. Arkansas*, the Supreme Court held that a Next Friend should comply with "two firm prerequisites:" (1) an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why

the real party in interest cannot appear on his or her own behalf to prosecute the action; and (2) a showing that the Next Friend is "truly dedicated to the best interests of the person the Next Friend seeks to represent."  495 U.S. 149, 163 (1990).

The First Circuit acknowledged that although "the Supreme Court recognized that some courts have 'suggested' that a Next Friend must also have a significant relationship with the real party in interest, the Court did not hold that a significant relationship is a necessary prerequisite for Next Friend status."  *Elliott*, 608 F.3d at 90 (citing *Whitmore*, 495 U.S. at 163-64).

Eight years prior to *Elliott*, the Ninth Circuit addressed *Whitmore* and provided a Next Friend analysis.  In *Coal. of Clergy, Lawyers & Professors v. Bush*, the Ninth Circuit quoted *Whitmore*'s requirements that a Next Friend must first provide an explanation why the real party in interest cannot appear, and then must also be shown to be truly dedicated to the best interests of the person on whose behalf he or she seeks to litigate.  310 F.3d 1153, 1162 (9th Cir. 2002) (quoting *Whitmore*, 495 U.S. at 163-64, and subsequently acknowledging that the Supreme Court recognized that "it has been . . . suggested that a 'next friend' must have some significant relationship with the real party in interest").

The Ninth Circuit further acknowledged that it had previously construed the two-pronged *Whitmore* inquiry as requiring the putative Next Friend to show (in habeas actions): (1) that the habeas petitioner is unable to litigate a cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the Next Friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner.  *Coal. of Clergy*, 310 F.3d at 1159-60 (citing *Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001)).  In reliance upon the interpretation offered by *Massie*, the Ninth Circuit concluded that a coalition of professionals lacked third-party standing to file habeas petitions on behalf of alleged terrorist combatants being detained in Cuba.  The court reasoned:

> The existence of a significant relationship enhances the probability that a petitioner is a suitable next friend, *i.e.*, that a petitioner knows and is dedicated to the prisoner's individual best interests.  The more attenuated the relationship between petitioner and prisoner, the less likely a petitioner can know the best interests of the prisoner.

* * *

> Nevertheless, the contours of the requisite "significant relationship" do not remain static, but must necessarily adapt to the circumstances facing each individual detainee. "Significance" is a relative concept, dependent on the individual prisoner's plight. Not all detainees may have a relative, friend, or even a diplomatic delegation able or willing to act on their behalf. In such an extreme case it is plausible that a person with "some" relationship conveying some modicum of authority or consent, "significant" in comparison to the detainee's other relationships, could serve as the next friend. Moreover, the concept of "true dedication" is a subjective one, difficult of measurement. The existence of some relationship, whether it be from authorized representation to friendship or alliance to familial, serves as an objective basis for discerning the "intruder" or "uninvited meddler" from the true "next friend."

*Coal. of Clergy*, 310 F.3d at 1162.

The court explicitly acknowledged that "there may be some extreme circumstances necessitating relaxation of the *Whitmore-Massie* standard," but determined that the record in the case before it was "devoid of such circumstances." *Id*. at 1162. Therefore, the court concluded that "even assuming the detainees are unable to litigate on their own behalf and even under the most relative interpretation of the 'significant relationship' requirement the Coalition lacks next-friend standing." *Id*. at 1163.

### B.    Analysis

At the outset, this court wholly rejects Simmons' contention that "this is not a case in which it is necessary or appropriate for the court to appoint – or, in this case, retain – a next friend to act on [A.N.'s] behalf." Simmons' Mem. Supp. at 7. As adjudicated in the unopposed motion for GAL appointment brought by MetLife, there is no reasonable dispute that appointment of a GAL was necessary to protect A.N.'s rights and to ensure that the life insurance proceeds due under the policy at issue are paid to the party legally entitled to them. The applicable Federal Civil Procedure Rule requires the court to appoint a GAL for the protection of a minor who is unrepresented in an action. Fed. R. Civ. Pro. 17(c)(2). There is also no dispute that A.N. was rendered "unrepresented" by conflicts arising between A.N. and plaintiff, her legal guardian. When the interests of A.N. and plaintiff diverged, appointment of a GAL became appropriate. *Id*.

The court has evaluated the record and also finds no grounds for questioning Beagle's qualifications or capacity to serve effectively as an GAL for A.N.  His experience, objectivity, and expertise in this role make him an exceptional candidate for such services.

Simmons' primary challenges to Beagle as GAL assert that Beagle lacks standing to serve as Next Friend for A.N. because he had no prior relationship with her.  Simmons Reply at 2-3. Simmons contends that "controlling Ninth Circuit authority" holds that "only people who have a 'significant relationship' with the real party in interest have standing to sue as a 'next friend,'" and that even if limited exceptions to this requirement are recognized, such exceptions are inapplicable in this case.  *Id*. at 2, 6.

After careful scrutiny of the relevant decisions from the United States Supreme Court and the Ninth Circuit, as well as other persuasive authorities, this court concludes that the standards applicable to the circumstances of this case are less restrictive than Simmons proposes. Moreover, even if Simmons' reading of authorities is correct, then this court rules alternatively that this action would qualify as an "extreme case" in which exceptions to the "significant relationship" analysis have been recognized by the Ninth Circuit.

Simmons relies upon the Ninth Circuit's 2001 decision in *Massie*, in which the court upheld a district court's decision that a journalist who had corresponded with a death row inmate for fifteen years lacked standing to appear as a "Next Friend" because the journalist failed to show that the inmate lacked competency to litigate his own cause.  244 F.3d at 1198-99.  The *Massie* court recited standards that Simmons interprets as helpful: a "putative next friend must show: (1) that the petitioner is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability; and (2) the next friend has some significant relationship with, and is truly dedicated to the best interests of, the petitioner." *Id*. at 1194 (citing *Whitmore*, 495 U.S. at 163-65).  Because the journalist in *Massie* failed to meet *Whitmore*'s first prong for standing, the Ninth Circuit elected not to address whether the journalist could be deemed to have had "some significant relationship with Massie and is truly dedicated to his best interests." *Massie*, 244 F.3d at 1199 n.3 (citing *Whitmore*, 495 U.S. at 163-64)).

7  - OPINION AND ORDER

Although it is true that the *Massie* court refers to a requirement that a Next Friend has some significant relationship with a prisoner for purposes of litigating a habeas corpus petition, the decision's references cite directly to the *Whitmore* holding. As noted above, and explicitly recognized by the First Circuit, the Supreme Court recognized only two prerequisites for Next Friend standing: an adequate explanation as to why the real party in interest cannot appear to prosecute the action, and a showing that the Next Friend is "truly dedicated" to the best interests of the person the Next Friend seeks to represent. *Whitmore*, 495 U.S. at 163; *see also Elliott*, 608 F.3d at 90 (citing *Whitmore*, 495 U.S. at 163-64). The Supreme Court did *not* hold that a significant relationship is a necessary prerequisite for Next Friend status, but noted that some courts have "suggested" that a Next Friend must also have a significant relationship with the real party in interest. *Whitmore*, 495 U.S. at 163-64 (citations omitted); *Elliott*, 608 F.3d at 90.

As also noted above, after the *Massie* decision, the Ninth Circuit reiterated the two-prong Next Friend test described in *Massie* and reasoned that "the existence of a significant relationship enhances the probability that a petitioner is a suitable next friend, *i.e.*, that a petitioner knows and is dedicated to the prisoner's individual best interests." *Coal. of Clergy*, 310 F.3d at 1162.

A Next Friend's probable suitability to represent a party certainly can be enhanced if the Next Friend enjoys a significant relationship with the party. It is just as true that "[t]he more attenuated the relationship between petitioner and prisoner, the less likely a petitioner can know the best interests of the prisoner." *Id*. The Ninth Circuit's resulting conclusion that a "faithful understanding" of *Whitmore* includes a requirement that a would-be Next Friend share a significant relationship with the real party in interest, and that a coalition of professionals could not serve as Next Friends to war detainees because they lacked any relationship with them, is sound under the circumstances presented in that case. *Id*.

Nevertheless, this court concludes that Simmons' proposed strict construction of the scope of the ruling in *Coal. of Clergy* violates the reasoning provided by the Supreme Court in *Whitmore*, and – when viewed from the circumstances presented in this case – fails to advance the principles underscored in the careful "Next Friend" analyses performed repeatedly by the

Ninth Circuit. As noted above, the Ninth Circuit wisely acknowledged that the "contours of the requisite 'significant relationship' do not remain static, but must necessarily adapt to the circumstances facing [the real party in interest]," and that the concept of "true dedication" – the Supreme Court's overriding concern regarding this issue in *Whitmore* – "is a subjective one, difficult of measurement." *Id*.

The Ninth Circuit then emphasized that the "existence of some relationship" – explicitly including an "authorized representation" such as Beagle's appointment – is appropriate for the primary purpose of evaluating Next Friend representations: objectively "discerning the 'intruder' or 'uninvited meddler' from the true 'next friend.'" *Id*.

A careful reading of *Whitmore* and the Ninth Circuit's reasoning of that decision in *Massie* and *Coal. of Clergy* compels this court to construe that Beagle's "authorized representation" established a sufficient relationship for purposes of Next Friend standing in this case. Beagle's appointment was necessary in light of the uncontroverted facts of this case. His authorized representation plainly distinguishes Beagle from a mere intruder or uninvited meddler. To impose a more onerous burden on Beagle before upholding his appointment would warp the relevance of *Whitmore*'s explicit holdings, and would misconstrue the analysis in *Coal. of Clergy* that pertained to the possible representation of war detainees for habeas petition purposes. *See, e.g., Elliott*, 608 F.3d at 91 (in evaluating an individual's capacity to serve as Next Friend for minors who lack ties with family members, some courts have rejected a rigid application of the significant relationship requirement, holding that the common-law concept of Next Friend is "capacious enough" to include individuals who pursue a suit on behalf of a minor in good faith) (citations omitted). Although "the significant relationship requirement may avert litigation by individuals who lack a concrete stake in the litigation, and also enhances the probability that a petitioner is a suitable Next Friend[,] . . . [i]mportant social interests are advanced by allowing minors access to a judicial forum . . . through a Next Friend that the court finds has a good faith interest in pursuing a federal claim on the minor's behalf." *Id*. at 91-92 (internal quotations omitted; citing *Coal. of Clergy*, 310 F.3d at 1162).

Assuming without deciding that Simmons' stricter construction of Ninth Circuit precedent is correct results in the same conclusion.  Simmons acknowledges that the Ninth Circuit recognized that in an "extreme case" in which the real party in interest lacks a relative or friend with whom a significant relationship is shared who is "able or willing" to act on the party's behalf, "it is plausible that a person with 'some' relationship conveying some modicum of authority or consent . . . could serve as the next friend." *Coal. of Clergy*, 310 F.3d at 1162.

This court concludes in the alternative that even if Beagle's lack of a pre-existing "significant relationship" with A.N. would otherwise preclude his service as GAL in this case under Ninth Circuit precedent, the facts presented in this litigation places the suit squarely within the exception for what the Ninth Circuit has contemplated as an "extreme case."

Scrutiny of the evidence that casts doubt upon the ability of Simmons or the alternate proposed GAL (the alleged maternal great-grandfather of A.N.) to serve on behalf of A.N. is unnecessary.  It is sufficient to note that the record provides sufficient grounds to question the objectivity and capacity of either of the proposed alternative GALs to be truly dedicated to the interests of A.N.  The offers of Simmons to disavow obvious potential conflicts, and the roles that both proposed alternative GALs could – and likely will – play in ongoing litigation with plaintiff preclude either as a reasonable GAL for A.N.  Accordingly, the facts presented plainly render this an "extreme case" in which Beagle's services are necessary and proper, even if Ninth Circuit precedent might otherwise generally suggest or require that a more subjective relationship be in place to support Next Friend standing.

### C.    Conclusion regarding Simmons' motion to remove Beagle

Simmons' Motion to Remove Beagle as GAL is denied.  His initial appointment was necessary and proper, and the nature of Beagle's good faith relationship to A.N. is sufficient to withstand the motion for his removal under the facts presented in this case.  Alternatively, assuming without deciding that Simmons' construction of relevant Ninth Circuit precedent places the correct emphasis upon the importance of a relationship between the GAL and an otherwise

10 - OPINION AND ORDER

unrepresented minor, this court concludes that this action constitutes an "extreme case" in which Beagle's representation remains necessary and appropriate.

**2.      A.N.'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

Also pending is A.N.'s Motion for Partial Summary Judgment [32] and Second Motion for Partial Summary Judgment [46].  The first motion seeks to dismiss the Estate from this action because the Estate is not a proper party in this action and lacks any viable claim to the policy stake.  The second motion seeks to dismiss the Estate's counterclaim seeking recovery for wrongful death, without prejudice to the Estate to pursue that claim in a proper state venue.

**A.      Standards**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of establishing the absence of a genuine dispute regarding material facts.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party.  *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id*. at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B.      Analysis**

**I.      First partial summary judgment motion**

The first partial summary judgment motion pertains to MetLife's decision to add the Estate as an interpleader co-defendant in this action.  There is no dispute that counsel for MetLife

did this because MetLife was notified by counsel for the Estate of Rhonda Casto that the Estate intended to advance a viable claim for the proceeds. Reply to First Summary Judgment Motion at 3 (citing and quoting Supp. Aff. of Scott F. Kocher). No claim of any kind against the insurance proceeds has materialized from the Estate.

The Estate's responsive brief to this motion focuses upon the purported propriety of MetLife's decision to add the Estate as an interpleader co-defendant. Response at 5-6. However, regardless of whether, as the Estate argues, "MetLife had good reason to believe that the estate might have a claim to the proceeds, even though the policy lists Nichols as the primary beneficiary and A.N. as the contingent beneficiary," A.N.'s motion seeks summary judgment for reasons independent of the possible merits of MetLife's prior decision-making. A.N.'s motion is based upon the absence of a claim to the proceeds by the Estate, and does not challenge whether MetLife had sufficient reason to believe that the Estate "might have" such a claim. The court has evaluated the authorities provided by the Estate in response to A.N.'s motion, and finds no basis for denying summary judgment on the grounds advanced. The Estate's failure to present a viable claim to the policy stake is ripe, well-taken, and dispositive.

## II.    Second partial summary judgment motion

On November 1, 2010, the Estate filed a "Cross-claim Against Nichols for Wrongful Death." The second dispositive motion by A.N. asserts that after the merits of her first summary judgment motion regarding the impropriety of the Estate as an interpleader claimant to the insurance proceeds are acknowledged, A.N. is entitled to dismissal of the Estate's wrongful death cross-claim for lack of jurisdiction. This court agrees, and declines to recognize jurisdiction over the Estate's wrongful death claim based upon the purported merits of an interpleader cross-claim that never materialized. The argument presented by A.N. that the Estate's presence in this interpleader action occurred only because the Estate advised MetLife that the Estate would advance a claim against the policy proceeds is persuasive.

An interpleader action allows the stakeholder of money to sue various claimants to force them to litigate who is entitled to the money. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261,

1265 (9th Cir. 1992). An interpleader action's primary purpose is to protect the stakeholder from multiple liability and the expense of multiple litigation, not to compensate the stakeholder. *See Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000) (explaining that interpleader is governed by equitable principles). Diversity in this case existed between the stakeholder party MetLife, an insurance company organized under the laws of New York with its principal place of business in New York, and the counterclaim defendants named by MetLife: Nichols and A.N. Title 28 U.S.C. § 2361 authorizes a district court to discharge the stakeholder in any civil interpleader action from further liability to claimants, and MetLife was subsequently discharged as a party in this case. Although the court properly retained jurisdiction over Nichols and A.N. after MetLife disclaimed interest in the controversy, the Estate has never established that it warranted status as a third interpleader claimant.

The Estate's attempt to persuade this court to exercise supplemental jurisdiction has been considered. The doctrine of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)"). Under that statute, district courts may also decline to exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of state law, if the claim substantially predominates over the claims that the district court had original jurisdiction, or if exceptional circumstances or compelling reasons exist for declining jurisdiction. 28 U.S.C. § 1367(c). The Supreme Court has opined that a court's discretion to exercise supplemental jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 715; *see also Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992).

13 - OPINION AND ORDER

Regardless of the factors that support retaining jurisdiction over the competing claims of the true interpleader co-defendants, there is no basis for exercising jurisdiction over the Estate's wrongful death claim. Such a claim would predominate over the remaining claims, requiring a trial on wrongful death damages even though no damages trial is necessary in litigating A.N.'s slayer claim, and also requiring litigation of negligence standards of care, negligence theories, and negligence facts that are unrelated to the slayer claim. Moreover, exercising jurisdiction over the wrongful death claim would necessitate the continued presence of the Estate as an additional party in the case, and could likely lead to challenges regarding the conflicts between Simmons as PR, and Simmons in her role as a co-beneficiary in the wrongful death action. Accordingly, this court declines to exercise jurisdiction over the Estate'ss wrongful death claim.

### C.    Conclusion regarding A.N.'s summary judgment motions

The partial summary judgment motions advanced by Beagle on behalf of A.N. are granted. The wrongful death claim is dismissed without prejudice to the Estate to pursue that claim in a proper state venue.

**OVERALL CONCLUSION**

For the reasons provided, Simmons' Motion to Remove Gary Beagle as A.N.'s Guardian Ad Litem [63] is denied. The partial summary judgment motions brought by Beagle on behalf of A.N. challenging the Estate's claims to the insurance proceeds [32], and challenging the Estate's status as a party and the viability of wrongful death claim in this interpleader action [46], are granted. Counsel are ordered to confer and to file a Joint Status Report addressing the propriety of entering a partial Judgment reflecting these rulings, and proposing a schedule for final adjudication of the remaining issues. This Report shall be filed by July 14, 2011.

IT IS SO ORDERED.

DATED this 20th day of June, 2011.


                                    /s/ Ancer L. Haggerty
                                    ANCER L. HAGGERTY
                                    United States District Judge


14 - OPINION AND ORDER